

RECEIVED
IMK
6/30/2021
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT

for the

Northern District of Illinois ▾

Eastern Division

| | | |
|---|---|---|
| Morris Tyson | ) | Case No. **21CV3504** |
| | ) | *(to be filled in by the Clerk's Office)* |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | Jury Trial: *(check one)* ☑Yes ☐No |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | |
| *please write "see attached" in the space and attach an additional* | ) | **JUDGE COLEMAN** |
| *page with the full list of names.)* | ) | **MAGISTRATE JUDGE COLE** |
| -v- | ) | |
| | ) | |
| Mars, Inc., Exel Logistics and DHL Express | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued. If the* | ) | |
| *names of all the defendants cannot fit in the space above, please* | ) | |
| *write "see attached" in the space and attach an additional page* | | |
| *with the full list of names.)* | | |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

I.    **The Parties to This Complaint**

A.    **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Morris Tyson |
| Street Address | 1955 Meadowview Ave. |
| City and County | Kankakee Kankakee County |
| State and Zip Code | IL 60901 |
| Telephone Number | 8152954592 |
| E-mail Address | |

B.    **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Defendant No. 1

| | |
|---|---|
| Name | Mars, Inc. |
| Job or Title *(if known)* | |
| Street Address | 4005 Cedar Creek Dr |
| City and County | Elwood Will County |
| State and Zip Code | IL 60421 |
| Telephone Number | (815) 722-6060 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | Exel Logistics |
| Job or Title *(if known)* | |
| Street Address | 4005 Cedar Creek Dr |
| City and County | Elwood Will County |
| State and Zip Code | IL 60421 |
| Telephone Number | (815) 722-6060 |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | DHL |
| Job or Title *(if known)* | |
| Street Address | 4005 Cedar Creek Dr |
| City and County | Elwood Will County |
| State and Zip Code | IL 60421 |
| Telephone Number | (815) 722-6060 |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

### C.   Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Mars Manteno Facility |
| Street Address | 1125 Sycamore Road |
| City and County | Manteno |
| State and Zip Code | IL 60950 |
| Telephone Number | |

## II.   Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☑    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑    Other federal law *(specify the federal law)*:

conspiracy

☑    Relevant state law *(specify, if known)*:

Breasch of contract

☐    Relevant city or county law *(specify, if known)*:

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

### III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐ Failure to hire me.

☑ Termination of my employment.

☐ Failure to promote me.

☑ Failure to accommodate my disability.

☑ Unequal terms and conditions of my employment.

☑ Retaliation.

☐ Other acts *(specify)*: _____

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)

May 13, 2015, May 26, 2015, June 2015, October 2016 and to present

C. I believe that defendant(s) *(check one)*:

☑ is/are still committing these acts against me.

☐ is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☑ race      African American

☐ color

☐ gender/sex

☐ religion

☐ national origin

☐ age *(year of birth)* _____ *(only when asserting a claim of age discrimination.)*

☑ disability or perceived disability *(specify disability)*

permanent resttrictions on my non dominate hand

E. The facts of my case are as follows. Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

I was wrongully terminated in retaliation for making and filing internal and external formal charges of race based claims of discrimination.  See attached

*(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.   Exhaustion of Federal Administrative Remedies

A.      It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*
November 10, 2015

B.      The Equal Employment Opportunity Commission *(check one)*:

☐       has not issued a Notice of Right to Sue letter.

☑       issued a Notice of Right to Sue letter, which I received on *(date)*    03/26/2021

*(Note:  Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.      Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐       60 days or more have elapsed.
☐       less than 60 days have elapsed.

## V.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Back and front pay; to be made whole i.e. 401k, social security, etc..; damages (punitive and compensatory); interest at the highest prevailing rate at the relevant times; fees and costs, including attorney fees; a judgement against Defendants; a formal letter of apology; a positive letter of reccommendation and; any other relief seen fit to be given by the court.

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        06/23/2021

Signature of Plaintiff

Printed Name of Plaintiff        Morris Tyson

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

## FACTS AND ALLEGATIONS

1. TYSON was employed at the MARS, Inc.-Mars Manteno warehouse beginning on or about January 19, 2004 as a Yard Driver/Spotter until May 13, 2015.

2. Various 3rd party logistics management companies managed the Mars Manteno facility whom at all times acted as agents of MARS, Inc. beginning with 4T's Management Company in 1999, Kenco Logistics in April of 2013 and Exel in March of 2015 at the Mars' warehouse in Manteno, Illinois.

3. At all relevant times, Defendants MARS and Exel employed in excess of fifteen (15) employees for at least twenty (20) calendar weeks in 2013 through 2015

4. At all relevant times, all matters regarding compensation, terms, conditions, rights and privileges of TYSON'S employment were governed and controlled by Defendant MARS and their agents including Defendant Exel.

5. At all relevant times TYSON possessed the skills, experience, qualifications and credentials necessary to work in his employment position and; TYSON adequately and completely performed all of the functions, duties and responsibilities of his employment, with Defendant MARS and its agents including Defendant Exel, satisfactorily.

6. Defendant Exel and others were acting as the agents of MARS, Inc. and in their conduct and actions as alleged herein were acting in a capacity within the scope of its authority, or, if said conduct was outside the scope of its authority, said conduct was known; authorized and ratified by Defendant MARS, Inc.

1

7. During Plaintiff's employment at the Mars Manteno Facility, Plaintiff engaged in protected activity by filing internal and external charges of discrimination. These charges were based upon race, disparate: 1) treatment, 2) impact and 3) pay, hostile work environment, failure to accommodate and disability among other issues and were dually filed at the Illinois Department of Human Rights herein after "IDHR" and the Equal Employment Opportunity Commission herein after "EEOC" beginning in September of 2014 through April of 2015.

8. Plaintiff asserts that he filed these charges because of continuing violations of race-based discrimination, the volatile and openly racially charged hostile work environment.

9. By the beginning of May of 2015, the Defendants Exel and Mars had received another set of Plaintiff's formal charges of discrimination dually filed at the IDHR and EEOC in April of 2015 against Mars and its former manager Kenco Logistics. The charges were served by mail to the MARS, Inc. Manteno facility located at 1125 Scyamore Rd., Manteno, IL 60950.

10. Within days of Defendants Mars and Excel receiving the charges of discrimination filed at the IDHR and EEOC, Plaintiff was terminated on May 13, 2015 for allegedly not being physically able to build a pallet.

11. Spotters moved the tractor trailers within the yard and offsite that were loaded by warehouse workers (forklift operators) after the product had been pulled and staged by other warehouse workers.

12. Spotters were required to have Commercial Driver's Licenses herein after "CDL."

13. Spotters did not load trucks, pull or stage product at the MARS Manteno facility as part of their specified duties as a Spotter.

2

14. Nor did any employee on an ongoing or regular basis build pallets at the Mars Manteno facility, as the product(s) were already palletized by Defendant Mars prior to being receipted at the Mars Manteno facility.

15. Defendants' jobs each had a job description that was developed from a job analysis according to Defendants policy and industry norms.

16. Exel is a DHL Express company that engages in supply chain management.

17. Exel was a privately held company in Westerville, Ohio., who in January of 2016 changed its name to DHL Supply Chain: North America Exel was hired to manage the MARS Manteno facility.

18. DHL Supply Chain: North America is a privately held company in Plantation, FL 33324

19. Exel began managing the Mars Manteno warehouse in March of 2015, after Kenco Logistics management contract was unexpectedly and prematurely terminated by MARS, Inc. in January of 2015.

20. Mars, Inc. is a privately held company in Virginia.

21. Defendant MARS, Inc. controlled and approved the budget for the Mars Manteno facility.

22. Defendant Mars, Inc. paid its management companies, including Exel and its former management companies, a management fee to manage the Mars Manteno facility.

23. Defendant MARS, Inc. passed thru their costs through its management companies including Exel and its immediate past management companies.

24. Defendant Mars, Inc. passed thru cost to its management companies, including 4T's, Kenco and Exel, the compensation of all the employees (temporary and part- & full-time employees), as well as, any invoices of the Mars Manteno facility.

25. Defendant Mars, Inc. was the ultimate payor of the salaries and benefits of the employees of the Mars Manteno facility.

26. Defendant Mars, Inc. during the relevant times either leased or had part ownership in the Mars Manteno facility and/or had an interest in this building since 1999. Defendant Mars, Inc. also paid the property taxes, fire protection costs, insurance, rack expense/amortization and other costs related to the facility.

27. Defendant Mars, Inc. provided the necessary tools to perform the assigned job functions, such as but not limited to: providing warehouse and office space, daily supervision, the computers, the software, as well as, the maintenance, upkeep and repairs of such, just as any employer would do.

28. Defendant Mars, Inc. set the performance management standards and goals for its management companies, including Defendant Exel and its immediate past management companies, as well as, with the employees of the Mars Manteno facility and its onsite Regional Distribution Manage-Robert Coffee.

29. Defendant MARS, Inc. managed its management companies, including Exel its current and its immediate former management companies, who managed the Mars Manteno facility along with other management companies in the MARS, Inc. network of distribution centers.

4

30. Defendant Mars, Inc. had a Respondeat Superior relationship with its immediate past and current management company Defendant Exel.

31. Defendant Mars, Inc. would provide daily guidance and issue directives to the Mars, Manteno facility.

32. Defendant had an on-site Regional District Manager herein after the "RDM" who managed and over saw the facility operations, including co-pack, who gave directives and held daily meetings with its manager, Exel, and other Mars Manteno employees.

33. At all relevant times, Coffey, acted on behalf of Mars, Inc. Coffey managed and approved operational activities of the Mars Manteno facility, including but not limited to: hiring, pay, scheduling, performance management, budgets and workflow among other things.

34. Organizationally the Mars Manteno General and Operational Managers answered to and conferred with the onsite RDM of Defendant Mars, Inc., as a matter of the course of ordinary business operations.

35. At all relevant times Craighton Wierzbowski was the Operations Manager.

36. Defendant MARS, Inc. controlled a written library of standard operating procedures, best practices, policies, procedures, and protocols at all relevant times.

37. Defendants had written standard operating procedures for all tasks at the Mars Manteno facility.

38. Defendant Mars, Inc. supplied policies and manuals, such as the **Mars US Warehouse Quality Manual** to its former and then current management company Defendant Exel.

5

39. Defendant Mars, Inc. and its manager Defendant Exel were subject to the Food Drug and Cosmetic ACT as amended by the Food Safety and Modernization Act herein referred to as "FSMA".

40. Defendant Mars, Inc. required its management companies, including its past management companies and its then current management company Exel be compliant with the FSMA.

41. Maker Baker, a white male, Spotter, with less seniority sustained an injury and was unable to perform his job as spotter.

42. Mark Baker and Mark Baker's disability were accommodated by Defendants.

44. Baker was not able to perform the essential duties and responsibilities as a Spotter.

45. Plaintiff asserts that Mark Baker was not terminated because he was not able to perform his job duties as a spotter; e.g. required to drive a reach truck among other duties.

46. Mark Baker continued his enjoyment of employment and fringe benefits, in an accommodated position, past Plaintiff's termination, although he was not able to perform the essential duties and responsibilities as a Spotter.

47. Defendants failed to even attempt to accommodate Plaintiff with modified duties and or offer Plaintiff another position that would have accommodated Plaintiff's perceived disability.

48. There were such positions at the Mars Manteno facility as a window clerk, lead, janitor or other positions that could have easily accommodated Plaintiff's perceived disability, if Defendants had chosen to do so.

49. Defendants were in violation of the American Disability Act.

50. The window clerk position was the position that Defendants accommodated Mark Baker with after his injury that rendered him unable to perform the job duties of a Yard Driver/Spotter.

51. Plaintiff did not require accommodations to perform his job as a Yard Driver/Spotter, even though he had permanent doctor's restrictions and Plaintiff had performed that job satisfactorily since his employment began.

52. Plaintiff's complaints and concerns that he raised in filing formal charges of discrimination at the EEOC were not investigated or addressed, but instead Plaintiff was terminated on May 13, 2015 in retaliation for such complaints.

53. Defendant Exel issued a letter dated May 26, 2015, reiterating that Plaintiff's employment was terminated effective May 13, 2015, due to their inability to accommodate Plaintiff's permanent restrictions in connection with Plaintiff's alleged position of a Yard Driver/Fork Lift Operator. Exhibit A

54. Defendants' May 26, 2015 reason for termination of employment differed from its May 13, 2015 reason for termination of Plaintiff being unable to build pallets because of his restrictions of lifting and repetitive use of his left hand.

55. Defendants' reason for Plaintiff's termination was inconsistent with the reason provide on May 13, 2015 and the reason(s) were inconsistent and pretextual.

56. Defendants February 13, 2015 offer letter (Exhibit B) position title differed from its May 26, 2015 termination letter. Exhibit A

57. Defendants May 26, 2015 letter states that Plaintiff was a Yard Driver/Forklift Operator. Plaintiff was hired as a Yard Driver/Spotter in 2004 at the Mars Manteno facility and performed that same job as his primary job until May 2015.

58. Plaintiff asserts that this reason was pretextual, as it was not a part of Plaintiff's job duties to responsibilities to drive a forklift truck.

59. In further support that Defendants' reason(s) were pretextual for terminating Plaintiff, Plaintiff was certified by Defendants as recent as March 16, 2015 to operate Material Handling Equipment (MHE) this would include, but would not be limited to a forklift truck. See Defendants December 12, 2019 Exhibit B to EEOC hereto attached as Exhibit C also see Plaintiff's MHE certification hereto attached as Exhibit D. Consequently, Plaintiff could have operated a forklift truck without restriction.

60. Plaintiff's physician also indicated, after reviewing Defendants' separate job descriptions of a Yard Driver and Forklift Operator, that Plaintiff was able to perform these separate jobs without restrictions or accommodations.

61. Plaintiff was also examined by an independent physician in compliance with the Department of Transportation (DOT) and a requisite of having a CDL.

62. Plaintiff was found fit to perform the duties of a Yard Driver/Spotter, even with the permanent restrictions in place.

63. Defendant Exel's February 20, 2020 response to the EEOC request for information Exhibit 2 Declaration of Craighton Wierzbowski supports the fact the Yard Driver/Spotter and Forklift Operator are separate and distinct jobs. Hereto attached as Exhibit E also refer to Exhibit I

8

64. Craighton Wierzbowski also goes on to describe, as the operations manager for the Mars Manteno facility during the relevant time, that the only time Yard Driver/Spotter was to work in the warehouse was on a voluntary basis and describes in detail what the process entailed.  page 1 ¶3 Exhibit E

65. Craighton Wierzbowski further clarifies that Forklift Operators work in the warehouse and infers that Yard Driver/Spotters work outside and that the jobs are not interchangeable or overlapping jobs but separate and distinct jobs.  page 2 ¶5 Exhibit E

66. According to Defendants' own operations manager, Craighton Wierzbowski, who goes on to say in his declaration that Plaintiff "never expressed any concerns to me about not being able to perform his job responsibilities as expected at any point." page 2 ¶ 6 Exhibit E

67. Plaintiff also agrees and concurs with Mr. Wierzbowski that he "never expressed any concerns to {him} about not being able to perform his job responsibilities as expected at any point" *Ibid*

68. Plaintiff asserts that he was able and willing to perform his job as a Yard Spotter and that he could also perform the Forklift Operator's job if needed.

69. Plaintiff asserts that he had not had a change in roles, responsibilities or titles to necessitate the adverse actions taken by Defendants.

70. Plaintiff asserts the reasons offered by or will be offered by Defendants are patently false and are in direct contradiction to: 1) the independent physician's findings for fitness for duty in compliance with DOT regulations and; 2) to Plaintiff's personal physician's findings of Plaintiff being fit for duty for either the Yard Driver/Spotter position or the Forklift Operator's position and; 3 to its own Operations Manager, Craighton Wierzbowski,

9

85. Defendants again breached its fiduciary obligation to TYSON by intentionally and willfully failing to administer its rules, policies, procedures, protocols and equitably.

86. Defendant Mars, Inc. allowed an outspoken, racially motivated and animus filled white-male, Pete Montsiwello, to continue his enjoyment of employment and fringe benefits, after he threatened Vernon Henry with racial overtures and epithets.

87. Defendant Mars, Inc. once again allowed this same outspoken, racially motivated and animus filled white-male, Pete Montsiwello, to once again continue his enjoyment of employment and fringe benefits, even after this time he attempted to kill the same Vernon Henry, an African American, whom he had previously made threatening racial overtures and epithets, with a forklift and continued to threaten to kill him all night long without reprisal.

88. It was said that Pete Montsiwello was just "horse-playing," by attempting to stab Henry with the forklift truck blades and run him over.

89. This incident resulted in Vernon Henry being terminate and of course Pete Montsiwello was rewarded for his despicable behavior by continuing to enjoy his employment and fringe benefits without consequence.

90. Defendant Mars, Inc. conduct had set in place all the makings for an incitement of race riot at the Mars Manteno facility, which created and fostered an animus and hostile work environment.

91. Defendants knew it had retaliated against TYSON by subjecting him to unequal terms and conditions of employment, wrongful termination and post-employment retaliation.

12

92. Defendants knew these and other actions would cause irreparable harm to TYSON and others.

93. As a direct and proximate result of Defendants' action, Plaintiff suffered serious injury, including but not limited to extreme embarrassment, humiliation, anxiety, fear, ridicule, physical upset and emotional distress, as well as, economic deprivation. Not to mention the irreparable harms suffered by TYSON'S family, to which he had to endure.

94. Plaintiff is informed and believes and thereon alleges that Defendants' conduct was intentional and malicious and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, and emotional distress, as well as, to avoid culpability and offer a legitimate non-discriminatory reason for termination.

95. Defendants' conduct in confirming and ratifying that conduct was done with knowledge that Plaintiff's emotional distress would thereby increase, and was done with a wanton and reckless disregard of the consequences to Plaintiff.

96. Defendants, in breach of the duty described above, negligently and carelessly handled Plaintiff's employment status, causing Plaintiff to incur unnecessary costs and expenses, otherwise burdening Plaintiff with unnecessary and excessive debts, as well as, defaming and diminishing TYSON's professional standing by purporting a contrived scheme riddled with flaws that TYSON had committed some other egregious and or repeated violation to warrant his termination.

97. Plaintiff believes that Defendants Mars, Inc. and Exel both breached and violated public policy, as it relates to being free from a hostile and racially animus work environment,

13

being subjugated to unequal terms and conditions of employment, as well as, disparate and disparaging treatment and impact during and post-employment.

98. Defendant Mars knew it had in excess of 30 discrimination charges filed against Defendant Mars and its agents of the Mars Manteno Facility at the EEOC at the time of Plaintiff's termination.

99. Robert Coffey and his superiors acknowledged and were aware since 2014 that numerous charges of discrimination had been filed and that it was a racially charged and hostile work environment that existed at the Mars Manteno facility.

100. Defendant Mars conspired with its agents and other Mars Manteno employees, such as, Exel to violate Plaintiff's protected rights

101. Plaintiff also believes that Defendant Mars and its employees and agents including Exel participated in the various contrived schemes by ratifying and sanctioning the termination of Plaintiff's.

102. Plaintiff also asserts that Mars, Inc. instructed Exel to terminate Plaintiff.

103. In yet another post-employment retaliatory action, Plaintiff learned in late October of 2016 that Defendants had been giving Plaintiff negative employment references, as this would have explained why Plaintiff had been unable to secure employment since his termination in May of 2015 and coincided with the reason provided to the Illinois Department of Employment Security.

104. Plaintiff is informed and believes and thereon alleges that Defendants' conduct was intentional and malicious and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, emotional distress and economic deprivation.

14

105. Defendants' malicious conduct caused Plaintiff further irreparable harms.

106. Defendants egregious conduct and behavior in an effort to avoid liability, continued
when Defendants presented altered documents to the EEOC in support of its October 18,
2018 position statement. Hereto attached as Exhibit H.

107. TYSON was paid an hourly rate and at all times was eligible bonuses. As part of his
employment compensation package, he also received or was entitled to medical benefits,
insurance, 401K, Paid Time Off and overtime as well as other benefits.

108. TYSON was wantonly, intentionally, willfully, and continually harassed, subjugated
and retaliated against throughout his tenure of employment with Defendants and beyond.

109. While employed by the Mars Manteno facility and managed by Defendant Mars agents
including Exel, TYSON was the victim of race and disability discrimination, harassment,
retaliation coercion, conspiracy, willful and intentional interference, as well as, a hostile and
animus work environment.

110. TYSON alleges that he and other African American co-workers belonging to protected
classes pursuant to the federal and the state of Illinois anti-Employment Discrimination laws
were held to different standards than other employees of Defendant.

111. For example, Defendants again breached its fiduciary obligation to TYSON by
intentionally and willfully allowing John Montgomery to perform the same job as a spotter
as TYSON and Ringo, who were African American; while allowing Montgomery, non-
black, not to meet the minimum qualifications of having a valid CDL as required.

112. Not only was Montgomery held to meeting the minimum standards or qualifications, he
was paid more than the Tyson and Ringo who were more qualified than he.

15

113.    Defendant Mars knew that John Montgomery failed to meet the minimum requirements as a Spotter, as referenced in Defendants October 18, 2018 excertped supporting documents, hereto attached as Exhibit I.

114.    TYSON alleges that African Americans and other employees that are members of the protected class have substantially lower employment and retention rates at the Mars Manteno facility, due to unfavorable terms, conditions and privileges of employment, such as: (1) lack of equal opportunity; (2) unfair and poor treatment; (3) harsher scrutiny and discipline and (4) less tolerance and leniency when making adverse employment decisions, among other things.

115.    TYSON believes that the Mars Manteno facility has a disproportionately lower number of African American employees in various management level positions.

116.    TYSON alleges that there were substantially more non-African American employees, especially in management level positions, at the Manteno facility, as well as, at other Mars, Inc. facilities.

117.    The non-African American employees at the Mars Manteno facility were treated much more favorably than TYSON and other African American employees.

118.    Moreover, TYSON alleges that other similarly situated, non-black, non-African American co-workers were not subjected to such treatment.

119.    In October of 2020, Plaintiff was issued letters of substantial findings against Defendants Mars, Inc. and Exel for Title VII and ADA violations.  Exhibit J

120.    Tyson received his Right to Sue Letters on March 26, 2021. Exhibit K

16

| Trainee | Training Item | Due Date | Trainee Completion Date | Trainer Review Completion Date | Is Proficient? | Manager Review Completion Date | Trainer | Manager | Comments |
|---|---|---|---|---|---|---|---|---|---|
| Tyson, Morris | MHE Skills Observation | 2015-03-16 14:54 | 2015-03-16 14:54 | 2015-03-16 14:54 | Y | 2015-03-17 08:52 | ROBINSCO | ROBINSCO | Start Up On Boarding |
| Tyson, Morris | MHE Operator Training | 2015-03-16 14:38 | 2015-03-16 14:38 | 2015-03-16 14:38 | Y | 2015-03-17 08:52 | ROBINSCO | ROBINSCO | Start Up On Boarding |
| | MHE Operator Training | 2015-03-16 14:38 | 2015-03-16 14:38 | 2015-03-16 14:38 | Y | 2015-03-17 08:52 | ROBINSCO | ROBINSCO | Start Up On Boarding |
| | MHE Skills Observation | 2015-03-16 13:23 | 2015-03-16 13:23 | 2015-03-16 13:23 | Y | 2015-03-17 08:52 | ROBINSCO | ROBINSCO | Start Up On Boarding |
| | MHE Skills Observation | 2015-03-16 14:54 | 2015-03-16 14:54 | 2015-03-16 14:54 | Y | 2015-03-17 08:52 | ROBINSCO | ROBINSCO | Start Up On Boarding |
| | MHE Operator Training | 2015-03-16 14:38 | 2015-03-16 14:38 | 2015-03-16 14:38 | Y | 2015-03-17 08:52 | ROBINSCO | ROBINSCO | Start Up On Boarding |
| | MHE Operator Training | 2015-03-16 14:38 | 2015-03-16 14:38 | 2015-03-16 14:38 | Y | 2015-03-17 08:52 | ROBINSCO | ROBINSCO | Start Up On Boarding |
| | MHE Skills Observation | 2015-03-16 13:23 | 2015-03-16 13:23 | 2015-03-16 13:23 | Y | 2015-03-17 08:52 | ROBINSCO | ROBINSCO | Start Up On Boarding |
| | MHE Operator Training | 2015-03-16 13:04 | 2015-03-16 13:04 | 2015-03-16 13:04 | Y | 2015-03-17 08:52 | ROBINSCO | ROBINSCO | Start Up On Boarding |
| | MHE Skills Observation | 2015-03-16 14:54 | 2015-03-16 14:54 | 2015-03-16 14:54 | Y | 2015-03-17 08:52 | ROBINSCO | ROBINSCO | Start Up On Boarding |
| | MHE Operator Training | 2015-03-16 14:38 | 2015-03-16 14:38 | 2015-03-16 14:38 | Y | 2015-03-17 08:52 | ROBINSCO | ROBINSCO | Start Up On Boarding |
| | MHE Skills Observation | 2015-03-16 14:54 | 2015-03-16 14:54 | 2015-03-16 14:54 | Y | 2015-03-17 08:52 | ROBINSCO | ROBINSCO | Start Up On Boarding |
| | MHE Operator Training | 2015-03-16 14:38 | 2015-03-16 14:38 | 2015-03-16 14:38 | Y | 2015-03-17 08:52 | ROBINSCO | ROBINSCO | Start Up On Boarding |
| | MHE Skills Observation | 2015-03-16 14:54 | 2015-03-16 14:54 | 2015-03-16 14:54 | Y | 2015-03-17 08:52 | ROBINSCO | ROBINSCO | Start Up On Boarding |
| | MHE Operator Training | 2015-03-16 14:38 | 2015-03-16 14:38 | 2015-03-16 14:38 | Y | 2015-03-17 08:52 | ROBINSCO | ROBINSCO | Start Up On Boarding |
| | MHE Skills Observation | 2015-03-16 14:54 | 2015-03-16 14:54 | 2015-03-16 14:54 | Y | 2015-03-17 08:52 | ROBINSCO | ROBINSCO | Start Up On Boarding |
| | MHE Operator Training | 2015-03-16 14:38 | 2015-03-16 14:38 | 2015-03-16 14:38 | Y | 2015-03-17 08:52 | ROBINSCO | ROBINSCO | Start Up On Boarding |

https://mail.google.com/mail/u/0/?tab=rm&ogbl#search/EVA,BARAN%40eeoc.gov/KtbxLwhCFZvxnHHRBLrTDXQDFdXngLJwBg?projector=1&messa...   1/1

Exhibit D



TYSON
EQUIPMENT

4T's Management

1125 Sycamore St.
Manteno, IL, 60905

Name: Morris
Tyson

**NOTICE OF COURSE
COMPLETION.
THIS NOTICE INDICATES
THAT ON :** 04/28/03

Has successfully completed

Trainer: William Schwerin

Crown Equipment Operator Training Program, Utilizing Video Tapes,
Classroom Discussion, Hands-on Operation & Testing for the following
Crown Equipment Models : PE3000 ,RC 3000; RD 5000

---

### Certified Power Industrial Truck Operator

#### This Certifies That

__Tyson, Morris__

**SAFERWay Mandatory MHE Training Requirements**

Trainer Signature: _Scott Robinson_

Date of Certification: __03/20/2015__

(expires 3 years after certification date)

4.     As mentioned in the previously provided Request for Information response, the facility used a "rotation" on Wednesdays due to the overlap of the two (2) Yard Driver/Spotter shifts. On Wednesdays, Yard Driver/Spotters were given the opportunity to work in the warehouse if there was not enough work to be performed in the yard. If the Yard Driver/Spotter did not want to work in the warehouse, they were offered voluntary time off ("VTO"). Yard Drivers/Spotters were able to take the VTO without being penalized for attendance. The associate had the option to work in the warehouse or take the VTO.

5.     During the employment period of Charging Party at the facility (March to May 2015), Esmeralda Phillips and Joseph Stump (who were identified as "Yard Drivers/Spotters" in the previously provided Exhibit A to DHL's request for information response submitted on or about December 13, 2019) were employed as Forklift Operators and any overtime they worked during this period, respectively, was in their capacity as a Forklift Operator and not as a Yard Driver/Spotter. Ms. Phillips and Mr. Stump became Yard Drivers/Spotters after Charging Party was no longer employed with DHL.

6.     Also, to my knowledge, Charging Party never expressed any concerns to me about not being able to perform his job responsibilities as expected at any point.

7.     I agree with the contents of DHL's position statement and Request for Information responses submitted in connection with Charging Party's Charges of Discrimination 21B-2016-00852; 440-2016-04158.

8.     I believe that Charging Party's termination was not based upon his disability or for any other unlawful reason.

9.     I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information and belief.

2

Date: February 18, 2020

Craighton Wierzbowski

3

# THOMPSON HINE

| ATLANTA | CINCINNATI | COLUMBUS | NEW YORK |
| CHICAGO | CLEVELAND | DAYTON | WASHINGTON. D.C. |

February 20, 2020

*By: Email Transmission (eva.baran@eeoc.gov)*
*and Digital Charge System Submission*

Eva Baran
Federal Investigator
Equal Employment Opportunity Commission
230 S. Dearborn, Suite 1866
Chicago, IL 60604

RE:  Morris Tyson v. DHL Supply Chain
EEOC Charge Nos.: 21B-2016-00852; 440-2016-04158

DHL is in receipt of the Request for Information in your email dated February 4, 2020. Please accept this as DHL's response to the Request for Information.

**1. Phone numbers for Yard Drivers listed in Exhibit A.**

The following list outlines the last known phone numbers for the Yard Drivers/Spotters listed in the previously provided Exhibit A to DHL's request for information ("RFI") response submitted on or about December 13, 2019:

a. Andrew Smith –
b. Esmeralda Philli
c. Morris Tyson – (815) 295-4592
d. Joseph Stump –
e. Karl Metke –
f. Thomas Leach –
g. John Montgome
h. Mardy Ringo – (

**2. Overtime records for all Yard Drivers from January 1, 2014 to December 31, 2015.**

Again, as we communicated in our RFI response submitted on or about December 13, 2019, we can still find no connection between the requested information and the issues presented by this matter, however we have enclosed as requested by the Commission the wage history reports outlining the overtime each Yard Driver/Spotter worked from January 1, 2014 to December 31, 2015, attached as Exhibit 1.

Tony.White@ThompsonHine.com  PH: (614) 469-3235  FAX: (614) 469-3361          4840-7467-9733.1

THOMPSON HINE LLP          41 South High Street          www.ThompsonHine.com
ATTORNEYS AT LAW           Suite 1700                    O: 614.469.3200
                           Columbus, Ohio 43215-6101     F: 614.469.3361


THOMPSON
HINE

Eva Baron
Federal Investigator
Equal Employment Opportunity Commission
February 20, 2020
Page 2

To further outline this information, we submit the attached Declaration of Craighton Wierzbowski, Operations Manager at the facility where Charging Party worked, attached as Exhibit 2. As noted therein, during the employment period of Charging Party at the facility (March to May 2015), Esmeralda Phillips and Joseph Stump were employed as Forklift Operators and any overtime they worked during this period, respectively, was in their capacity as a Forklift Operator and not as a Yard Driver/Spotter. Ms. Phillips and Mr. Stump became Yard Drivers/Spotters after Charging Party was no longer employed with DHL.

**3. Copy of the CBA (if unionized).**

Upon information and belief, Charging Party was not a member of a union, and no applicable Collective Bargaining Agreement exists.

**4. Onsite visit.**

According to our records, the facility where Charging Party worked was closed in December of 2019. Based on this information, an onsite observation is not possible.

**5. Interview with HR from the relevant time period.**

At the time of Charging Party's separation in May 2015, the Human Resources representative over the facility where Charging Party worked was Area Human Resources Manager, Karol Boyd. Ms. Boyd is set to retire from DHL effective February 29, 2020. If additional information is needed from her, please contact DHL's Legal Counsel to set up a time to discuss this matter.

It should also be noted that Kim Daniels, Human Resources Manager, is the person who primarily engaged with Charging Party during the course of his employment with DHL. Based on our records, Ms. Daniels is no longer employed by DHL as of October 25, 2019.

DHL reiterates the fact that Human Resources and the site management team worked with Charging Party to provide him with a reasonable accommodation. Because Charging Party had permanent restrictions of a twenty-five (25) pound weight limit and no repetitive activity with his left hand, he was unable to perform the essential functions of a Yard Driver/Spotter or Forklift Operator, with or without a reasonable accommodation. The essential functions of his job required him to be able to operate a forklift and required the occasional lifting, pulling, pushing, or carrying up to 100 pounds. The site was unable to accommodate his permanent restrictions, and accordingly he was separated from employment in May 2015.

Exhibit A



May 26, 2015

**Exel**
1263 Windham Parkway
Romeoville, IL
60446

Telephone 630.771.0667
Facsimile 630.771.0490

www.exel.com

Mr. Morris Tyson
P. O. Box 291
Kankakee, IL 60901

Dear Morris:

We are in receipt of the Interactive Process Questionnaire that was completed by Doctor Wesley Choy on May 4, 2015. Per his report you have a permanent restriction of a 25 pound weight limit and no repetitive activity with your left hand. As we discussed in our meeting with Kim Daniels and Chris Moncrief on May 13, 2015, Exel is not able to accommodate these permanent restrictions in your position as a Yard Driver / Fork Lift Operator. Therefore, as discussed you were separated from employment effective the end of your shift on May 13, 2015.

If you were enrolled in Be Secure Benefits, you will receive paperwork at your home that will provide information on your eligibility to continue healthcare coverage through COBRA.

As we also discussed, if at any time the restrictions are lifted, you are eligible to apply for reemployment under Exel's rehire policy.

Please feel free to call me with any questions or concerns you have.

Sincerely,

Karol A. Boyd
Area Human Resources Manager

Karol.Boyd@Exel.com
Tel     630.771.0667 ext. 20928
Fax     630.771.0490
Mobile  630.930.2217

Raising expectations

Exhibit B



February 13, 2015

Dear Morris Tyson

Congratulations! We are pleased to confirm our offer for a full-time position with Exel effective March 2, 2015. This offer is contingent upon the execution of a signed contract with Mars which is expected prior to this transition date. You are also required to attend a new hire orientation. The date, location, and time of the new hire orientation will be announced soon. You will be paid for this time after you start with Exel.

Please review the following and indicate your acceptance by signing this copy and returning it to Amanda Dibblee, Human Resources or any of the other Exel HR representatives on site. Please return it as soon as possible, but no later than Monday, February 16, 2015.

| | |
|---|---|
| Title: | Yard Driver |
| Location: | Mars/Exel /Manteno, IL |
| Shift: | Wed – Sat 5:00am – 3:00pm |
| Hourly Rate: | $18.50** |

**If this rate is above Exel's Wage Progression, you will be paid this rate for a period of one year or until you reach Exel's wage rate, whichever is sooner. If after the one year, you are still above Exel's Wage Progression; your hourly rate will be no less than the 48 month step in your job category of the wage progression.

You will maintain your Kenco service date for the purpose of Health Benefits and Vacation. Your vacation eligibility for 2015 will be pro-rated based on your start date of March 2, 2015.

If you have any additional questions, please contact Amanda Dibblee, 630.338.2374.

Sincerely,


Exel Human Resources




I accept the position of a Full-Time Regular Exel associate.


_____                    _____
Signature                                           Date

Exhibit C

# Exhibit B

who indicated that Plaintiff had "never" raised or poised any issue relative to him being able to perform his job as specified, including his voluntary work in the warehouse operating a Forklift and; 4) Defendants' certification and records that Plaintiff was certified to operate a forklift in compliance with Defendants' and OSHA's policies and; 5) Plaintiff's contention that he was fit for duty to perform the Yard Driver/Spotter position and the Forklift Operator Position.

71. Plaintiff also asserts that Defendants' offer letter of employment and his execution of such constituted a contractual agreement. Plaintiff is informed and believes, and on that basis alleges that, at all times relevant to this action, Plaintiff and Defendants had a fiduciary relationship upon which Plaintiff justifiably relied to his detriment.

72. Plaintiff asserts that as a term and condition of Plaintiff's employment at the Mars Manteno facility that Plaintiff had to sign and return the written offer letter(s) extended to him as acceptance of the position. Exhibit B

73. By virtue of the relationship between Plaintiff and Defendants, a fiduciary duty existed.

74. Plaintiff believes that Defendants breached its fiduciary obligation(s) to TYSON.

75. Pursuant to said duty, Defendants owed the utmost good faith and fairness to Plaintiff in all matters pertaining to Defendants' conduct with respect to Plaintiff's' employment and all the terms and conditions imposed upon Plaintiff.

76. Plaintiff also asserts that Defendants' offered yet another reason for Plaintiff's termination to the Illinois Department of Employment Security.

77. In post employment retaliation, Defendants represented to the Illinois Department of Employment Security in late May of 2015 or early June of 2015 that Plaintiff was discharged for misconduct hereto attached as Exhibit F.

78. It was determined by the Illinois Department of Employment Security on or about June 22, 2015 that Plaintiff was not discharged from Defendants due to misconduct hereto attached as Exhibit G.

79. Plaintiff further asserts that Defendant Exel and Mars intentionally interfered with his rights and benefits to enjoy unemployment compensation after being wrongfully terminated in retaliation for filing internal and external complaints of race-based discrimination.

80. Defendants' intentional misrepresentation vexatiously delayed Plaintiff's unemployment compensation.

81. Defendants' acts caused Plaintiff intentional infliction of emotional duress and stress, as it left Plaintiff without income for a significant period of time.

82. Defendant Mars, Inc. again breached its fiduciary obligation to TYSON by intentionally and willfully failing to investigate the internal and formal complaints as outlined in the company's policy and required by law, but instead terminated his employment on May 13, 2015.

83. Defendants knew that it had failed to follow its own policies and procedures, as well as, public policy.

84. Defendant Mars, Inc. knew that it was deliberately, intentionally, and willfully fostering and creating an animus and hostile work environment.

11

Exhibit E

## DECLARATION OF CRAIGHTON WIERZBOWSKI

I, __Craighton Wierzbowski__, do hereby state on my own personal knowledge as follows:

1.  I am employed by Exel, Inc. d/b/a DHL Supply Chain (USA) ("DHL") most recently as the Operations Manager, for DHL's facility in Joliet, Illinois. Prior to this, I was the Operations Manager at the facility in Manteno, Illinois where Morris Tyson ("Charging Party") worked from on or about March to May 2015 ("facility"). Since that facility closed in December 2019, my duties were transferred to the facility in Joliet.

2.  I submit this Declaration in response to the requests for information provided by the Equal Employment Opportunity Commission and to further supplement our position statement (submitted in response to the Charges of Discrimination 21B-2016-00852; 440-2016-04158).

3.  At the time of Charging Party's employment at this facility, DHL did not use a person's service date or seniority status to determine overtime. In the event that overtime was mandatory, it was generally mandated as an extension of the associate's shift. For example, associates who were scheduled to work a ten (10) shift would be mandated to come into work two (2) hours prior to the start of their shift to fulfill the overtime requirements. When overtime was mandatory, it was mandated for every associate, regardless of their position. In addition, overtime was often offered on a voluntary basis for all associates. In the event overtime was offered on a voluntary basis, it was administered on a first come, first serve basis. This voluntary overtime was also offered to any Yard Driver/Spotter who wanted to pick up additional shifts in the warehouse. Any Yard Driver/Spotter, including Charging Party, had the ability to sign up for overtime when it was announced. DHL does not use seniority to determine hours of work or overtime.

1



Eva Baron
Federal Investigator
Equal Employment Opportunity Commission
February 20, 2020
Page 3

## 6. Interview with supervisor, Chris Moncrief.

Upon information and belief, Charging Party's supervisor, Chris Moncrief (Operations Manager), is no longer employed by DHL Supply Chain as of January 2019.

## 7. An explanation as to how the site management team determines who is senior.

It is important to clarify that although the concept of a "seniority list" was introduced by the Commission in the RFI we responded to in the above-captioned matters on December 13, 2019, seniority (and/or an associate's "service date") was not a factor that would have been considered when determining overtime at this facility.

To further outline this information, we submit the attached Declaration of Craighton Wierzbowski, Operations Manager at the facility where Charging Party worked, attached as Exhibit 2. As stated therein, at the time of Charging Party's employment at this facility, DHL did not use a person's service date or seniority status to determine overtime. In the event that overtime was mandatory, it was generally mandated as an extension of the associate's shift. For example, associates who were scheduled to work a ten (10) shift would be mandated to come into work two (2) hours prior to the start of their shift to fulfill the overtime requirements. When overtime was mandatory, it was mandated for every associate, regardless of their position. In addition, overtime was often offered on a voluntary basis for all associates. In the event overtime was offered on a voluntary basis, it was administered on a first come, first serve basis. This voluntary overtime was also offered to any Yard Driver/Spotter who wanted to pick up additional shifts in the warehouse. Any Yard Driver/Spotter, including Charging Party, had the ability to sign up for overtime when it was announced. DHL does not use seniority to determine hours of work or overtime.

DHL reiterates the contents of its position statement submitted in response to the above-captioned Charges. Again, DHL has never discriminated against Charging Party in any way. DHL specifically denies that it has taken any adverse employment action because of any discriminatory or retaliatory animus. Charging Party's allegations are without merit. Therefore, DHL respectfully requests that the Commission issue a no-cause finding and dismiss the Charge in its entirety.



THOMPSON
HINE

Eva Baron
Federal Investigator
Equal Employment Opportunity Commission
February 20, 2020
Page 4


Please feel free to reach out to me or to Vanessa Roig, Esq. at Vanessa.Roig@dhl.com, if you require any additional information to complete your investigation.

Respectfully submitted,

Anthony C. White


Enclosures

**Exhibit F**

Illinois Department of Employment Security

P.O. Box 19509
Springfield, IL 62794
Phone: (800) 244-5631 · TTY: (800) 244-5631
Fax: (217) 557-4913
www.ides.illinois.gov



lIlIdIIooblodIooooIIIIooooidIdIooooIIdIoooIioIdII
MORRIS J. TYSON
PO BOX 291
KANKAKEE, IL 60901-0291

Date Mailed: 06/09/2015
Claimant ID: 3860081
Issue Number: 003



### Notice of Interview

(Este es un documento importante. Si usted necesita un intérprete, póngase en contacto con el Centro de Servicio al Reclamante al (800) 244-5631)

A question has been raised regarding your eligibility for unemployment insurance benefits for the period beginning 05/17/2015. This interview is requested because the employer indicated you were discharged. To resolve this question, an interview will be necessary for you to supply information regarding 602A. Misconduct applies to your eligibility in this case. At the time of your scheduled interview, be prepared to present any information you have regarding your case.

You have been scheduled to be interviewed by telephone on 06/18/2015, at 02:30 PM. We will telephone you at this time or within ten minutes after this time at (815) 295-4592. If the telephone number listed is incorrect, please contact the Agency at the phone number listed above to correct the number prior to your scheduled interview date. If a questionnaire is enclosed with this form, please complete, sign, and return the form by mail or fax, along with any other requested documents prior to your interview date and time. If you have witnesses who can provide information helpful to your case, have them available for the interview. If you reside outside the State of Illinois, contact the Agency at the phone number listed above.

If you expect to be working, or for any other good reason you will not be available for the interview, complete the enclosed form(s) and mail it to at P.O. Box 19509, Springfield, IL 62794 or fax to (217) 557-4913 to reschedule your interview date. This notice is for your protection and is not a denial of benefits. A final determination regarding your eligibility for benefits will not be made until you have had an opportunity to discuss this matter with our office. Failure to make yourself available for this interview at the date and time listed above will result in a determination being made on the information available to the Representative, which may cause your benefits to be suspended, terminated, reduced or recouped.

Este aviso es para su protección y no es una negación de beneficios. Una determinación final con respecto a su elegibilidad para beneficios no será hecha hasta que haya tenido la oportunidad de discutir este asunto con nuestra oficina. La falta de estar disponible para esta entrevista en la fecha y hora mencionados anteriormente resultará en una determinación hecha basada en la información a disposición del Representante, que puede causar que sus beneficios sean suspendidos, terminados, reducidos o recuperados.



J22F                              Page 1 of 4                ADJ022F                    307 AR, BR, CR

Exhibit G

**Illinois Department of Employment Security**

P.O. Box 19509
Springfield, IL 62794
Phone: (800) 244-5631 - TTY: (800) 244-5631
Fax: (217) 557-4913
www.ides.illinois.gov

llhll..ll.ll.l.....llll....l.ll.l....llll.l.....ll.ll.l
MORRIS J. TYSON
PO BOX 291
KANKAKEE, IL 60901-0291

Date Mailed:   06/22/2015
Claimant ID:   3860081

## Determination

(Este es un documento importante. Si usted necesita un intérprete, póngase en contacto con el Centro de Servicio al Reclamante al (800) 244-5631)

The following determination has been made in connection with the claim for unemployment insurance benefits.

Based on the issue included in this letter, you are eligible for benefits or wait week credit as long as you meet the eligibility requirements.

Wait week credit will be granted and/or benefit payment will be ordered for each week.

Please read each determination carefully as it may include benefit reductions.

Issue 003 602A - Misconduct
Allow  Effective 05/17/2015 - 12/31/9999
Was the claimant discharged for misconduct connected with the work? The evidence shows the claimant was discharged from EXEL INC because of personal reasons. In a discharge separation, the burden of proof rests with the employer to show good cause attributable to the claimant. In this case, the evidence at hand has failed to establish the employer discharged the claimant with good cause. Accordingly, the employer has failed to meet his burden proof. Since the claimant's action, which resulted in his discharge was not a violation of a reasonable rule or policy of the employing unit, the claimant is not ineligible for benefits from 05/17/2015 in regard to this issue.

FOR INFORMATION REGARDING YOUR RIGHTS UNDER ILLINOIS' UNEMPLOYMENT INSURANCE ACT AND THE EXACT LANGUAGE OF THE ACT AND IDES RULES, PLEASE VISIT THE AGENCY'S WEBSITE AT www.ides.illinois.gov/UIRights.
FOR INFORMATION ON HOW TO OBTAIN FREE LEGAL SERVICES SEE IMPORTANT NOTICE BELOW.

If you require further details concerning the information in this letter, please contact the Agency at the phone number listed above.

Please see appeal rights listed below and additional information regarding this determination.

003 602A - Misconduct - 820 ILCS 405/602A provides that an individual shall be ineligible for benefits for the weeks in which he has been discharged for misconduct connected with his work, and, thereafter, until he has become re-employed and has had earnings equal to or in excess of his current weekly benefit amount in each of four calendar weeks. The term "misconduct" means the deliberate and willful violation of a reasonable rule or policy of the employing unit governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit.

If you disagree with this determination, you may complete and submit a request for reconsideration/appeal. A letter will suffice if you do not have an agency form. Your request must be filed with the Illinois Department of Employment Security within thirty (30) calendar days after the date this notice was mailed to you. If the last day for filing your request is a day that the Department is closed, the request may be filed on the next day the Department is open. Please file the request by mail or fax at the address or fax number listed above. Any request submitted by mail must bear a postmark date within the applicable time limit for filing. If additional information or assistance regarding the appeals process is needed, please contact the Agency at the phone number listed above.

If you file or have filed a request for reconsideration/appeal, continue to certify for benefits as long as you remain unemployed or until you are otherwise instructed, even though you will not receive benefits unless the appeal is decided in your favor.

Exhibit H

# ASSOCIATE ACKNOWLEDGEMENT FORM

## Associate acknowledgement of key policies

To communicate important information about Exel, your role here and your safety and well-being on the job, key policies and related information are provided to you. Any additional policies that apply to your specific role will be provided separately. Questions on this information should be directed to your supervisor or Human Resources representative.

Please check the policies and related information received and acknowledge receipt by signing below.

*MT*    510.3 General Behavior and Work & Safety Policy

*MT*    210.5 Corrective Action Policy

*MT*    220.9 Drug- and Alcohol-Free Workplace Policy

*MT*    210.1 Workplace Harassment Policy

*MT*    520.5 Workplace Violence Prevention Policy

*MT*    520.1 Attendance and Punctuality Policy

*MT*    420.3 Leave of Absence Policy

*MT*    420.1 Vacation Policy

*MT*    120.1 Solicitation Policy

*MT*    220.8 Inspection Policy

*MT*    Role Profile

*MT*    *Your Exel Experience* Associate Handbook

I agree that I have received the Exel policies and related information listed above. I understand that in my role as an associate of Exel I am required to follow and support these policies and procedures. I also understand that Exel may change these policies from time to time without notice. I further understand that these policies replace and supersede all earlier, related policies and supersede all previous oral and written descriptions or terms and conditions of employment.

*Morris J. Tyson*
(Signature)

*3-3-15*
(Date)

*Morris J. Tyson*
(Print name)

*ForkLift Operator*
(Title/Role)

*For Internal Use Only*

03-2014

**BE MORE.**

| Qualifications / Capability Profile | | |
|---|---|---|
| **Minimum Education** | **Essential?** | **Desirable?** |
| -   High school diploma or equivalent | X | |
| **Minimum Experience (indicate depth & breadth)** | **Essential?** | **Desirable?** |
| -   Two years driving switching or commercial tractor. | | X |

| Minimum Knowledge/Skills/Abilities (indicate intensity & duration) | Essential? | Desirable? |
|---|---|---|
| -   Some knowledge of commonly-used concepts, practices, and procedures within a docking environment | | X |
| -   Considerable knowledge of tractor/truck mechanics and maintenance | X | |
| -   Good written and verbal communication skills | X | |
| -   Ability to maintain clean driving record | X | |
| -   Ability to comply with all applicable OSHA regulations, commercial driving requirements as per state and federal D.O.T. and/or MSDS standards | X | |
| -   Ability to comply with company safety rules, regulations, and required testing | X | |
| -   Ability to read, understand, and follow directions/instructions | X | |
| -   Ability to read and follow maps | X | |
| -   Ability to identify, locate, and disburse product | X | |
| - | | |
| - | | |

| Exel Competencies Required (refer to Exel Experience for additional information and Competency Definitions) | |
|---|---|
| Passing grade on written exam, physical exam, company yard test, and drug screen. | |

| Job-Specific Competencies Required | |
|---|---|
| N/A | |

| Travel Requirements (explain if required) | None (0%) | Minimal (0-10%) | Occasional (10-25%) | Frequent (>25%) |
|---|---|---|---|---|
| International Travel | X | | | |

| Approvals | | | |
|---|---|---|---|
| | **Name** | **Company & Signature** | **Date** |
| Applying/Hiring Manager Name | | | |
| Department HR Representative Name | | | |
| Manager of Hiring Manager Name | | | |

The above statements are intended to describe the general nature and level of work being performed by people assigned to this job. They are not intended to be an exhaustive list of all responsibilities, duties, and skills required of personnel so classified. Management maintains the right to assign or reassign duties and responsibilities to this job at any time.

Rev. 07/08

# Role Profile
## Physical Requirements & Working Conditions

| Role Title: | Yard Driver Non DOT | Job Code: | TBD |
|---|---|---|---|
| Location: | Varies | FLSA Status: | TBD |
| Created By / Date: | | Job Family: | |
| Revised By / Date: | JCK / 04-2009 | Job Function: | |

Please indicate the essential physical requirements, the percentage of time, and the weight in lbs. if applicable. This form must be completed for each job.

| Physical Requirement | Weight (in lbs.) | Rarely (0-2%) | Occasional (3-33%) | Frequent (34-66%) | Constant (67-100%) | N/A |
|---|---|---|---|---|---|---|
| Pushing | 100 lbs. | | X | | | |
| Pulling | 100 lbs. | | X | | | |
| Lifting | 100 lbs. | | X | | | |
| Carrying | 100 lbs. | | X | | | |
| Climbing | | | | X | | |
| Sitting | | | | | X | |
| Kneeling | | | X | | | |
| Walking | | | X | | | |
| Standing | | | X | | | |
| Vision | | | | | Near, far, peripheral | |
| Operation of Equipment | | | | | tractor trailers & straight trucks | |

Please indicate the overall working environment encountered on the job.

**Inside__10_____%**          **Outside__90_____%**

| Working Conditions | YES | NO | N/A | LIST EXAMPLES |
|---|---|---|---|---|
| Dust / Dirt Environment | | X | | |
| Sudden Temperature Change | X | | | Varies by product being transported |
| Extreme Temperature | | X | | |
| Humidity | X | | | Varies by product being transported |
| Noise Levels | | X | | |
| Unusual Lighting | | | X | |
| Moving / Mechanical Parts | X | | | Varies by product being transported |
| High Exposure | X | | | Varies by product being transported |
| Fumes | | X | | |
| Gas | | X | | |
| Odors | | X | | |
| Mist | X | | | Fuels |
| Chemicals (Toxic, Caustic, etc.) | X | | | Varies by product being transported |
| Electrical | | X | | |
| Radiation | | X | | |

The above statements are intended to describe the general nature and level of work being performed by people assigned to this job. They are not intended to be an exhaustive list of all responsibilities, duties, and skills required of personnel so classified. Management maintains the right to assign or reassign duties and responsibilities to this job at any time.

Rev. 07/08

# Role Profile

| Role Title: | Forklift Operator | Job Code: | 5001 |
|---|---|---|---|
| Location: | Varies | FLSA Status: | Nonexempt, hourly |
| Created By/Date: | Aug 1, 2003 | Job Family: | GENOPS |
| Revised By/Date: | Compensation / December, 2010 | Job Function: | Operations |

## Role Purpose / Position Summary

Responsible for operating powered equipment for the purpose of moving, locating, relocating, stacking, and counting product. Responsible for checking all inbound and outbound products. Ensures products are free of damage and infestation, product code dates are properly recorded and products match customer requirements.

## Key Accountabilities / Primary Duties & Responsibilities

- Load, unload, move, stock, and stage products and materials using a forklift, clamp truck, or other power equipment 80% of specified shift.
- Pull and prepare product for shipment ensuring the exact number and types of product is loaded
- Keep appropriate records and reports for inventory accuracy.
- Comply with all OSHA and MSDS standards.
- Verify load accuracy; check the load count, stability, and product damage, Report variances as necessary.
- Changes equipment battery or LP tank and monitors power source as necessary.
- Maintain the facility's equipment and materials in a neat, clean, and orderly fashion.
- Assist in physical inventories.
- Complete daily inspection of equipment.
- Perform additional duties as assigned by management or customer.

## People Management Responsibilities
## (Refer to Exel Experience for additional information)

N/A

## Scope of Responsibility

| Resources (e.g., budget, staff, etc.): | Decision Making Authority: |
|---|---|
| N/A | None |
| Report to (Title): Varies | Supervises (Titles): |
| Operations Supervisor, Operations Mgr | N/A |

| Key Relationships (External & Internal) | Focus (Nature of Interaction) |
|---|---|
| Peers | Work with peers in order to complete warehouse functions accurately. |
| Group Coord Lead | Receive work assignments and training |
| Management | Receive direction for adhering to company policies, practices, and procedures. |

## Performance Indicators (What criteria will be used to assess performance)
- Site specific measures

## Qualifications / Capability Profile

| Minimum Education | Essential? | Desirable? |
|---|---|---|
| - High school diploma or equivalent | | X |

The Physical Requirements and Working Conditions section is intended to describe the nature of work and the minimum requirements of the job in general. Each site may have its own set of Physical Requirements and Working Conditions based on product(s) handled at the site and customer requirements.

Statements in this job description are not intended to be an exhaustive list of all duties, responsibilities, and skills required of personnel so classified. Management maintains the right to assign or reassign duties and responsibilities to this job at any time.

Rev. 07/2010

| | | | | protective safety equipment |
|---|---|---|---|---|
| Fumes | | X | | |
| Mist | | X | | |
| Odors | X | | | |
| Gasses | | X | | |
| Chemical Exposure (e.g., solid or liquid) | X | | | May be exposed to hazardous materials |
| Dust | | X | | |
| Poor Ventilation | | X | | |
| Other | X | | | May require compliance with OSHA regulations or MSDS standards |

The Physical Requirements and Working Conditions section is intended to describe the nature of work and the minimum requirements of the job in general. Each site may have its own set of Physical Requirements and Working Conditions based on product(s) handled at the site and customer requirements.

Statements in this job description are not intended to be an exhaustive list of all duties, responsibilities, and skills required of personnel so classified. Management maintains the right to assign or reassign duties and responsibilities to this job at any time.

Rev. 07/2010

# Role Profile
## Physical Requirements & Working Conditions

| | | | |
|---|---|---|---|
| Role Title: | Forklift Operator | Job Code: | 5001 |
| Location: | Varies | FLSA Status: | Nonexempt, hourly |
| Created By/Date: | Aug 1, 2003 | Job Family: | GENOPS |
| Revised By/Date: | Compensation / December 2010 | Job Function: | Operations |

Please indicate the essential physical requirements, the percentage of time, and the weight in lbs. if applicable. This form must be completed for each job.

| Physical Requirements | Max Weight in lbs. | Rarely 0-2% | Occasional 3-33% | Frequent 34-66% | Constant 67-100% | N/A |
|---|---|---|---|---|---|---|
| Pushing | 100 lbs. | X | | | | |
| Pulling | 100 lbs. | X | | | | |
| Lifting | 100 lbs. | X | | | | |
| Carrying | 100 lbs. | X | | | | |
| Climbing | | X | | | | |
| Sitting | | | | | X | |
| Kneeling | | X | | | | |
| Walking | | | X | | | |
| Standing | | | | | X | |
| Vision | | | | | Near, far, depth, and peripheral | |
| Operation of Equipment | | | | | Forklift and other power equipment | |

Please indicate the overall working environment encountered on the job.

## Inside____90____%                    Outside____10____%

| Working Conditions | YES | NO | N/A | LIST EXAMPLES |
|---|---|---|---|---|
| Normal Office Environment | | X | | |
| Sudden Temperature Change | | X | | |
| Extreme Temperatures | | | X | Warehouses without A/C and freezer environments |
| Humidity/Wet | X | | | |
| Extreme Noise | | X | | |
| Extreme Vibration | | X | | |
| Hazards (e.g. electricity, height) | X | | | The work involves risks or discomforts, e.g. working around moving parts and equipment |
| Safety Equipment | X | | | Some safety precautions and/or the use of |

The Physical Requirements and Working Conditions section is intended to describe the nature of work and the minimum requirements of the job in general. Each site may have its own set of Physical Requirements and Working Conditions based on product(s) handled at the site and customer requirements.

Statements in this job description are not intended to be an exhaustive list of all duties, responsibilities, and skills required of personnel so classified. Management maintains the right to assign or reassign duties and responsibilities to this job at any time.

Rev. 07/2010

| - | Forklift operator certificate or satisfactory completion of a forklift-training program within the first 30 days of employment | X | |
|---|---|---|---|
| **Minimum Experience (indicate depth & breadth)** | | **Essential?** | **Desirable?** |
| - | Six months warehouse experience | | X |
| - | Six months forklift operation experience | | X |

| **Minimum Knowledge/Skills / Abilities (indicate intensity & duration)** | | **Essential?** | **Desirable?** |
|---|---|---|---|
| - | Ability to spend 80% of time operating powered material handling equipment | X | |
| - | Basic familiarity with the warehousing | X | |
| - | Good written and verbal communication skills | X | |
| - | Ability to work specified shifts | X | |
| - | Ability to follow work procedures and safety rules | X | |
| - | Ability to read, understand, and follow directions/instructions | X | |
| - | Working knowledge of warehouse management system equipment | | X |

| **Exel Competencies Required (refer to Exel Experience for additional information and Competency Definitions)** |
|---|
| N/A |

| **Job Specific Competencies Required** |
|---|
| N/A |

| **Travel Requirements** | **None (0%)** | **Minimal (0-10%)** | **Occasional (10-25%)** | **Frequent (>25%)** |
|---|---|---|---|---|
| National Travel | X | | | |
| International Travel | X | | | |

| **Approvals** | **Name** | **Company** | **Signature** | **Date** |
|---|---|---|---|---|
| Appointing Manager Name | | | | |
| Designated HR Representative Name | | | | |
| Manager of Appointing Manager Name | | | | |

The Physical Requirements and Working Conditions section is intended to describe the nature of work and the minimum requirements of the job in general. Each site may have its own set of Physical Requirements and Working Conditions based on product(s) handled at the site and customer requirements.

Statements in this job description are not intended to be an exhaustive list of all duties, responsibilities, and skills required of personnel so classified. Management maintains the right to assign or reassign duties and responsibilities to this job at any time.

Rev. 07/2010

Exhibit J



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Chicago District Office

JCK Federal Building
230 S. Dearborn
Suite 1866 (Enforcement, State and Local & Hearings)
Suite 2920 (Legal & ADR)
Chicago, IL 60604
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Chicago Direct Dial: (312) 872-9777
Administration Fax: (312) 588-1255
Enforcement/File Disclosure Fax: (312) 588-1260
Federal Sector Fax: (312) 588-1265
Intake FAX: (312) 588-1286
Legal Fax: (312) 588-1494
Mediation Fax: (312) 588-1498
Website: www.eeoc.gov

EEOC Charge Number: 21B-2016-00852

Morris Tyson
11528 South Halsted
Chicago, IL 60628

Charging Party

vs.

Exel Logistics
1125 West Sycamore
Manteno, IL 60950

Respondent

## DETERMINATION

Under the authority vested in me by the Commission's Procedural Regulations of the Equal Employment Opportunity Commission (EEOC), I issue the following determination on the merits of the subject charge filed under Americans with Disabilities Act, as amended (ADA) and Title VII of the Civil Rights Act of 1964, as amended (Title VII).

The Respondent is an employer within the meaning of ADA and Title VII and all requirements for coverage have been met.

The Charging Party alleged that he was discriminated against based on race, Black, disability and in retaliation for engaging in protected activity, in that he was harassed, discharged, and his unemployment benefits were denied, in violation of Title VII and the ADA

I have determined that the evidence obtained in the investigation establishes reasonable cause to believe that Respondent discriminated against Charging Party based on his disability and in retaliation for engaging in protected activity, by discharging him, in violation of the ADA.

This determination is final. When the Commission finds that violations have occurred, it attempts to eliminate unlawful practices by informal methods of conciliation. Therefore, I invite the parties to join with the Commission in reaching a just resolution of this matter. Disclosure of information

obtained during the conciliation process will be made only in accordance with the Commission's Procedural Regulations (29 CFR Part 1601.26).

If the Respondent wishes to accept this invitation to participate in conciliation efforts, please notify your Commission representative within 14 days. You are encouraged to include proposed terms for a conciliation agreement. The remedies for violations of the statutes we enforce are designed to make the identified victims whole, and to provide corrective and preventative relief. These remedies may include, as appropriate, an agreement by the Respondent not to engage in unlawful employment practices, placement of identified victims in positions they would have held but for discriminatory actions, back pay, restoration of lost benefits, injunctive relief, compensatory and/or punitive damages, and notice to employees of the violation(s) and the resolution of the claim.

Should the Respondent have further questions regarding the conciliation process or the conciliation terms it would like to propose, we encourage you to contact the assigned Commission representative. Should there be no response from the Respondent within 14 days, we may conclude that further conciliation efforts in this matter would be futile or non-productive.

On Behalf of the Commission,

_10/27/2020__
Date

Wendy Martin
_____ /for_____
Julianne Bowman
District Director



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

JCK Federal Building
230 S. Dearborn
Suite 1866 (Enforcement, State and Local & Hearings)
Suite 2920 (Legal & ADR)
Chicago, IL 60604
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Chicago Direct Dial: (312) 872-9777
Administration Fax: (312) 588-1255
Enforcement/File Disclosure Fax: (312) 588-1260
Federal Sector Fax: (312) 588-1265
Intake FAX: (312) 588-1286
Legal Fax: (312) 588-1494
Mediation Fax: (312) 588-1498
Website: www.eeoc.gov

EEOC Charge Number: 440-2016-04158

Morris Tyson                                                      Charging Party
11528 South Halsted
Chicago, IL 60628

vs.

Mars, Inc.                                                       Respondent
1125 West Sycamore
Manteno, IL 60950

## DETERMINATION

Under the authority vested in me by the Commission's Procedural Regulations of the Equal
Employment Opportunity Commission (EEOC), I issue the following determination on the merits
of the subject charge filed under Americans with Disabilities Act, as amended (ADA) and Title
VII of the Civil Rights Act of 1964, as amended (Title VII).

The Respondent is an employer within the meaning of ADA and Title VII and all requirements for
coverage have been met.

The Charging Party alleged that he was discriminated against based on race, Black, disability and
in retaliation for engaging in protected activity, in that he was harassed, discharged, and his
unemployment benefits were denied, in violation of Title VII and the ADA

I have determined that the evidence obtained in the investigation establishes reasonable cause to
believe that Respondent discriminated against Charging Party based on his disability and in
retaliation for engaging in protected activity, by discharging him, in violation of the ADA.

This determination is final. When the Commission finds that violations have occurred, it attempts
to eliminate unlawful practices by informal methods of conciliation. Therefore, I invite the parties
to join with the Commission in reaching a just resolution of this matter. Disclosure of information

obtained during the conciliation process will be made only in accordance with the Commission's Procedural Regulations (29 CFR Part 1601.26).

If the Respondent wishes to accept this invitation to participate in conciliation efforts, please notify your Commission representative within 14 days. You are encouraged to include proposed terms for a conciliation agreement. The remedies for violations of the statutes we enforce are designed to make the identified victims whole, and to provide corrective and preventative relief. These remedies may include, as appropriate, an agreement by the Respondent not to engage in unlawful employment practices, placement of identified victims in positions they would have held but for discriminatory actions, back pay, restoration of lost benefits, injunctive relief, compensatory and/or punitive damages, and notice to employees of the violation(s) and the resolution of the claim.

Should the Respondent have further questions regarding the conciliation process or the conciliation terms it would like to propose, we encourage you to contact the assigned Commission representative. Should there be no response from the Respondent within 14 days, we may conclude that further conciliation efforts in this matter would be futile or non-

On Behalf of the Commission,

_____10/27/2020_____
Date

Wendy Martin _____/for

Julianne Bowman
District Director

Exhibit K

## MARY SZROMBA

| | |
|---|---|
| **From:** | JENNIFER GARCIA |
| **Sent:** | Friday, March 26, 2021 8:48 AM |
| **To:** | jthoffmanlaw@gmail.com |
| **Cc:** | EVA BARAN |
| **Subject:** | NRTS: 21B-2016-00852 . . . Tyson v. Exel Logistics and 440-2016-04158 . . . Tyson v. Mars, Inc. |
| **Attachments:** | 2021-01-20 Failure ltr CP Tyson v. Exel 21B-16-00852.pdf; 2021-01-20 161-A Failed Tyson v. Mars .440-16-04158.pdf; 2021-01-20 Failure ltr CP Tyson v. Mars 4-16-04158.pdf; 2021-01-20 161-A Failed Tyson v. Exel Logistics 21B-16-00852.pdf |

Mr. Hoffman:

See attached NRTS from Director Bowman.

If you have any questions, please contact Eva Baran at Eva.Baran@eeoc.gov.

Please confirm receipt.

Thank you,

Jennifer L. Garcia
Office Automation Assistant
Equal Employment Opportunity Commission
230 South Dearborn, Suite 1866
Chicago, IL 60604



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

JCK Federal Building
230 S. Dearborn
Suite 1866 (Enforcement, State and Local & Hearings)
Suite 2920 (Legal & ADR)
Chicago, IL 60604
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Chicago Direct Dial: (312) 872-9777
Administration Fax: (312) 588-1255
Enforcement/File Disclosure Fax: (312) 588-1260
Federal Sector Fax: (312) 588-1265
Intake FAX: (312) 588-1286
Legal Fax: (312) 588-1494
Mediation Fax: (312) 588-1498
Website: www.eeoc.gov

Morris Tyson
c/o Jordan Hoffman P.C.
2711 East New York St. #205
Aurora, IL 60502

Re:    Charging Party:    Morris Tyson
        Respondent:       Exel Logistics
        EEOC Charge:    21B-2016-00852

Dear Mr. Tyson:

Attached please find a Notice of Right to Sue issued on your behalf in the above referenced matter. The Commission's efforts to conciliate this matter with Respondent have been unsuccessful. The Commission has determined that it will not bring a lawsuit against the Respondent. By issuing the attached Notice of Right to Sue, the Commission is terminating its processing of your charge.

The attached Notice of Right to Sue entitles you to pursue private litigation concerning your allegations against Respondent(s) within 90 days of your receipt of this letter. You may wish to retain a private attorney at this time.

If you do file suit based on this Notice of Right to Sue, it is requested that you provide us with a copy of the complaints you file in court.

On Behalf of the Commission:

1/20/2021

*Julianne Bowman/eh*

Date

Julianne Bowman
District Director

Enclosure(s)

EEOC Form 161-A (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE
### (CONCILIATION FAILURE)

To: **Morris Tyson**
**c/o Jordan Hoffman P.C.**
**2711 East New York St. #205**
**Aurora, IL 60502**

From: **Chicago District Office**
**230 S. Dearborn**
**Suite 1866**
**Chicago, IL 60604**

☐ *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **21B-2016-00852** | **Eva Baran, Investigator** | **(312) 872-9681** |

**TO THE PERSON AGGRIEVED:**

This notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### - NOTICE OF SUIT RIGHTS -
#### (See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Julianne Bowman/eh*

**Julianne Bowman,**
**District Director**

1/20/2021

*(Date Mailed)*

Enclosures(s)

cc:

**Exel Logistics**
**c/o Anthony White**
**Thompson Hine LLP**
**41 South High Street #1700**
**Columbus, OH 43215**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

JCK Federal Building
230 S. Dearborn
Suite 1866 (Enforcement, State and Local & Hearings)
Suite 2920 (Legal & ADR)
Chicago, IL 60604
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Chicago Direct Dial: (312) 872-9777
Administration Fax: (312) 588-1255
Enforcement/File Disclosure Fax: (312) 588-1260
Federal Sector Fax: (312) 588-1265
Intake FAX: (312) 588-1286
Legal Fax: (312) 588-1494
Mediation Fax: (312) 588-1498
Website: www.eeoc.gov

Morris Tyson
c/o Jordan Hoffman P.C.
2711 East New York St. #205
Aurora, IL 60502

Re:     Charging Party:     Morris Tyson
        Respondent:         Mars, Inc.
        EEOC Charge:        440-2016-04158

Dear Mr. Tyson:

Attached please find a Notice of Right to Sue issued on your behalf in the above referenced matter. The Commission's efforts to conciliate this matter with Respondent have been unsuccessful. The Commission has determined that it will not bring a lawsuit against the Respondent. By issuing the attached Notice of Right to Sue, the Commission is terminating its processing of your charge.

The attached Notice of Right to Sue entitles you to pursue private litigation concerning your allegations against Respondent(s) within 90 days of your receipt of this letter. You may wish to retain a private attorney at this time.

If you do file suit based on this Notice of Right to Sue, it is requested that you provide us with a copy of the complaints you file in court.

On Behalf of the Commission:

_1/20/2021_
Date

*Julianne Bowman/eh*
Julianne Bowman
District Director

Enclosure(s)

EEOC Form 161-A (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE
## (CONCILIATION FAILURE)

| To: | Morris Tyson<br>c/o Jordan Hoffman P.C.<br>2711 East New York St. #205<br>Aurora, IL 60502 | From: | Chicago District Office<br>230 S. Dearborn<br>Suite 1866<br>Chicago, IL 60604 |
|---|---|---|---|

☐   *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2016-04158 | Eva Baran,<br>Investigator | (312) 872-9681 |

### TO THE PERSON AGGRIEVED:

This notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### - NOTICE OF SUIT RIGHTS -
#### (See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Julianne Bowman/eh*                                           1/20/2021

Enclosures(s)

**Julianne Bowman,**
**District Director**

*(Date Mailed)*

cc:

**Mars, Inc.**
**c/o Anthony White**
**Thompson Hine LLP**
**41 South High Street #1700**
**Columbus, OH 43215**